IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**MARY L. SHERMAN,**

       **Plaintiff,**

                                          Civil Action 2:12-cv-738
    v.                              Judge James L. Graham
                                          Magistrate Judge Elizabeth P. Deavers

**COMMISSIONER OF SOCIAL SECURITY,**

       **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for social security disability benefits. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors, the Commissioner's Memorandum in Opposition, Plaintiff's Reply, and the administrative record. (ECF Nos. 10, 13, 14, 9.) For the reasons that follow, it is **RECOMMENDED** that the Commissioner's nondisability finding be **REVERSED** and that this action be **REMANDED** to the Commissioner and the ALJ under Sentence Four of § 405(g).

## I. BACKGROUND

Plaintiff filed her application for benefits on April 22, 2008, alleging that she has been disabled since July 13, 2007, at age 50. (R. at 94-98.) Plaintiff alleges disability as a result of bipolar disorder, depression and anxiety, insomnia, hypothyroid, osteopenia, carpel tunnel of the left wrist, allergies, attention deficit disorder, severe headaches and acid reflux. (R. at 123.) Plaintiff's application was denied initially and upon reconsideration. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ").

ALJ Timothy G. Keller held a hearing on September 21, 2010, at which Plaintiff, represented by counsel, appeared and testified. (R. at 28-36.) Barry J. Brown, a vocational expert, also appeared and testified at the hearing. (R. at 36-40.) On December 2, 2010, the ALJ issued a decision finding that Plaintiff is not disabled within the meaning of the Social Security Act. (R. at 11-20.) On June 25, 2012, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-4.) Plaintiff then timely commenced the instant action.

## II. HEARING TESTIMONY

### A. Plaintiff's Testimony

At the administrative hearing, Plaintiff testified that she has a certificate in paralegal studies, although it is currently expired, as well as a diploma for administrative medical assisting. (R. at 29.) Plaintiff indicated that she has not worked since December 8, 2006. (R. at 31.) She testified that before that date she worked as a paralegal. According to Plaintiff, she was fired from her last four jobs only a short period of time because she "told them off." *Id.* She held a job as a paralegal for approximately two years at another location before she was fired for making mistakes. (R. at 32.)

Plaintiff testified that she receives treatment for bipolar disorder, anxiety, and social phobia. *Id.* She indicated that she suffers from crying spells and mood swings. She stated that during manic episodes she overspends and has more energy. In a "down state," however, she stated that she gets depressed and irritable and does not feel like doing anything. Plaintiff testified that she suffers from depression more than manic symptoms. (R. at 33.) She also indicated that she suffers from poor memory and has difficulty focusing on one thing at a time.

She testified that she rarely leaves her house alone because she dislikes crowds and people. She indicated that she experiences anxiety attacks when she is near crowds. Plaintiff also stated that her medications cause her to feel tired. (R. at 35.)

Plaintiff further testified that she suffers from various physical symptoms. She stated that she suffers from back pain. She also indicated that she has pain in her right arm, which prevents her from lifting heavy objects. (R. at 34.) She stated that she cannot lean over the bath tub for any length of time when she bathes her dog.

According to her testimony, Plaintiff performs light housekeeping. (R. at 35.) She stated that she does her laundry. If her house needs any "heavy vacuuming" or if she needs any "major moving done," she has a friend who comes over to help her. (R. at 35.) She had a significant other who lived with her up until a month before the hearing. Plaintiff testified that her significant other did the chores and yard work when he lived there.

Plaintiff testified that she usually stays home by herself. (R. at 35.) She stated that her daughter calls her once or twice per week. She indicated that she has friends who live around her condo, but that she visits with them only briefly.

**B.     Vocational Expert Testimony**

Barry Brown testified as the vocational expert ("VE") at the administrative hearing. (R. at 36-40.) The ALJ asked the VE to assume that a hypothetical individual suffered no physical limitations, and that she was able to understand, remember, and carryout simple tasks and instructions. In addition, the ALJ asked the VE to assume this person was able to maintain concentration and attention for two-hour segments over an eight-hour work period; respond appropriately to supervisors and coworkers in a task-oriented setting where contact with others is

casual and infrequent; and adapt to simple changes and avoid hazards in a setting without strict production quotas.  Based the ALJ's hypothetical, the VE testified that such a person would be unable to perform Plaintiff's past work.  The VE further testified that such a person would be able to perform other jobs that exist in the regional or national economy.  (R. at 37.)  The VE testified that such jobs exist at all exertional levels, and offered several examples of positions in the medium, unskilled range, including machine tender positions, "cleaner type jobs," and "office helper positions."  *Id.*

On cross examination by Plaintiff's counsel, the VE testified that if the same hypothetical person was required to miss three days of work or more, she would not be able to sustain competitive work activity.  (R. at 38.)  The VE further testified that no work would be available to the individual if she had no useful ability to understand even short simple instructions or maintain attention for two-hour segments, or if she was unable to work in coordination with others without being unduly distracted.  (R. at 39.)  He also testified that such an individual would be precluded from work if for two-thirds, one-half, or one-quarter of the workday she was unable to sufficiently maintain concentration, persistence and pace, and unable to complete tasks in a timely manner.  (R. at 40.)

## III. MEDICAL RECORDS[1]

A.    **Dale Michalak, M.D.**

Plaintiff treated with Dr. Michalak, for primary care from December 2006 through at least March 2010. (R. at 203-74, 362-422, 501-12.) Unfortunately, Dr. Michalak's treatment notes are hand-written and difficult to decipher due to poor penmanship.

On April 8, 2008, Dr. Michalak completed an evaluation form relating to Plaintiff's mental and physical limitations. (R. at 250-55.) He diagnosed Plaintiff with bipolar disorder, depression, anxiety, insomnia, and hypothyroid disease. Dr. Michalak assigned her a Global Assessment of Functioning ("GAF") score of 45.[2] (R. at 250.) He indicated on the form that Plaintiff has "no impairment" in her abilities to climb, bend, reach above her shoulders or operate heavy machinery. (R. at 257.) In a section entitled "limitations (activities patient cannot do)," Dr. Michalak wrote "Do physical labor (chronic back pain)"; "work under stress"; and "work at a fast pace." *Id.*

Plaintiff continued to treat with Dr. Michalak through 2010, but his treatment notes for that period are illegible. On May 13, 2010, Dr. Michalak authored a letter to Plaintiff's counsel regarding Plaintiff's medical condition. (R. at 587.) Dr. Michalak indicated that Plaintiff has diagnoses of a thyroid condition, neck pain, decreased density of the bones, back pain, depression with anxiety, and attention deficit disorder ("ADD"). *Id.* He noted that he last saw

---

[1] For the sake of judicial economy, this section includes only those medical records related to the Undersigned's conclusion that this matter must be reversed and remanded to the Commissioner.
[2] The GAF scale is used to report a clinician's judgment of an individual's overall level of functioning. Clinicians select a specific GAF score within the ten-point range by evaluating whether the individual is functioning at the higher or lower end of the range. *See* Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision at pp. 32-34 ("DSM-IV-TR"). A GAF score of 45 is indicative of "serious symptoms . . . or serious impairment in occupational, social, or school functioning." DSM-IV-TR at 34.

Plaintiff on March 15, 2010 for an injury to her right arm as a result of lifting an object.  He stated that Plaintiff suffers limitations in her ability to lift, bend, walk, push and pull due to pain in her neck, back and arm pain.  He further opined that Plaintiff suffers marked impairment as a result of her ADD and depression, "which manifests itself in decreased concentration, increased frustration, inability to control emotions, and interaction with others."  *Id.*  Dr. Michalak further noted that Plaintiff experiences increased difficulty during times of stress or perceived stress.  *Id.*

Dr. Michalak also completed a physical capacity evaluation form on May 13, 2010.  (R. at 591-92.)  He opined that Plaintiff can stand up to thirty minutes at a time for a total of three hours in the work day; walk fifteen minutes at a time for a total of two hours in the work day; and that she can sit for a total of eight hours in a work day.  He opined that she can lift up to ten pounds occasionally; and that she is unable to push or pull. (R. at 591.)  He indicated that Plaintiff can bend and climb steps occasionally, but that she cannot squat, crawl or climb ladders. (R. at 592.)  Lastly, Dr. Michalak opined that Plaintiff's condition would deteriorate if she were under stress associated with a job because stress increases her physical and emotional symptoms. *Id.*

**B.     Peggy Cook, Ph.D.**

Plaintiff began treating with Dr. Cook on December 14, 2006 and continued treatment until at least March 28, 2009.  (R. at 294-325, 595-98.)

On April 8, 2008, Dr. Cook completed a medical source statement as to Plaintiff's mental limitations.  (R. at 275-80.)  Dr. Cook noted that Plaintiff suffers from various mental impairments.  She further noted that Plaintiff's mental-health condition exacerbates her pain and other physical symptoms.  Specifically, she noted that "high stress environments lead to muscle

6

tension and spinal complaints." (R. at 277.) She opined that Plaintiff's impairments would cause her to miss work approximately one day per month. Dr. Cook also opined that Plaintiff cannot be exposed to repetitive bending or lifting due to her back condition. (R. at 280.)

**C.     Herbert Grodner, M.D.**

On June 29, 2008, Dr. Grodner examined Plaintiff on behalf of the state agency. (R. at 478-84.) He noted that Plaintiff "has problems with her neck and her hips." (R. at 478.) She also presented with complaints of low back pain. He noted that Plaintiff also has decreased density in her bones. On examination, Dr. Grodner noted that Plaintiff appeared in no acute distress. (R. at 479.) He also noted Plaintiff's gait as normal, and that she can squat and walk heel-to-toe. (R. at 480.) Dr. Grodner also noted normal range of motion in all of Plaintiff's joints. He concluded that Plaintiff can perform "most types of physical activities," but that "weight bearing and heavy lifting would be difficult[] because of the [decreased density of her bones.]" *Id.* In addition, Dr. Grodner noted that Plaintiff "could perform sedentary activity," but that "there is also a history of depression and that diagnosis needs to be evaluated by the appropriate specialist to assess it[s] impact for her to perform daily activities." *Id.*

## IV. THE ADMINISTRATIVE DECISION

On December 2, 2010, the ALJ issued his decision. (R. at 11-20.) At step one of the sequential evaluation process,[5] the ALJ found that Plaintiff had not engaged in substantially

---

[5] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.    Is the claimant engaged in substantial gainful activity?
2.    Does the claimant suffer from one or more severe impairments?
3.    Do the claimant's severe impairments, alone or in combination, meet or

7

gainful activity since her alleged onset date of July 13, 2007.  (R. at 13.)  The ALJ found that Plaintiff suffers from the severe impairments of bipolar disorder and anxiety disorder.  *Id.*  The ALJ concluded that none of Plaintiff's physical impairments is severe.  (R. at 14.)  He found that Plaintiff suffers severe mental impairments of bipolar disorder and anxiety disorder.  (R. at 13.)  He further found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.*  At step four of the sequential process, the ALJ evaluated Plaintiff's RFC as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: simple tasks and instructions with the ability to maintain concentration and attention for two hours at a time and no strict production quotas.  The claimant can adapt to simple changes and can respond appropriately to supervisors and co-workers.

(R. at 16.)  In reaching this determination, the ALJ accepted Dr. Michalak's April 2008 opinion, but gave "little" weight to his May 2010 opinion, stating "[t]here has been no change in [Plaintiff's] condition from April 2008 until May 2010 to warrant the severe limitations offered by Dr. Michalak."  (R. at 17.)  The ALJ also rejected Dr. Cook's April 2008 opinion concerning Plaintiff's physical limitations, finding that she is a psychologist and "thus not qualified to offer an opinion regarding the claimant's physical impairments."  *Id.*  The ALJ also rejected Dr.

---

        equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

Grodner's June 2008 opinion concerning Plaintiff's physical limitations.  In doing so, he stated that the opinion "is inconsistent with itself," because Dr. Grodner opines that Plaintiff can perform most types of physical activities, but only limited to sedentary work.  *Id.*  In addition, the ALJ found that Dr. Grodner's opinion is unsupported by the evidence because the record, including Dr. Grodner's examination, fails to indicate that Plaintiff suffers from significant abnormalities.  *Id.*

The ALJ next considered Plaintiff's mental limitations.  He rejected Dr. Michalak's April 2008 opinion that Plaintiff had poor to no ability to perform most work-related activities and his May 2010 opinion in which he opined that Plaintiff suffers moderate to marked limitations in most work-related categories.  In doing so, the ALJ stated that he "cannot accept these opinions [because] Dr. Michalak is not a mental health practitioner."  (R. at 18.)  The ALJ also indicated that "the evidence does not support these limitations, i.e. [Plaintiff's] ability to perform routine, daily activities, etc."  *Id.*  The ALJ found the October 18, 2008 opinion of Dr. Cook to be consistent with the RFC he imposed.  *Id.*  Finally, the ALJ indicated that he "cannot give much weight" to the May 2010 opinion of Dr. Stark, wherein Dr. Stark opined that Plaintiff would have difficulty dealing with the stress of working a full-time job.  *Id.*  In that opinion, as the ALJ recognized, Dr. Stark also opined that Plaintiff suffers mild to moderate limitations in most work areas.  The ALJ rejected Dr. Stark's first statement as "too nebulous to determine exactly what the claimant can tolerate or not tolerate."  *Id.*  He rejected her latter opinion, stating that "[a]s for the check marks, it is difficult to determine just how these terms, i.e. mildly, moderately, would relate to the claimant's ability to work."  *Id.*

9

Relying on the VE's testimony, the ALJ determined that jobs exist in significant numbers in the state and national economy that Plaintiff can perform. (R. at 19-20.) He therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 20.)

## V.  STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v.*

*Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. LEGAL ANALYSIS

In her Statement of Errors, Plaintiff contends that the ALJ committed reversible error in according the weight that he did to the opinions of her treating physician. The Undersigned agrees, and concludes that the ALJ's error precludes a finding that substantial evidence supports his decision.[2]

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(d). The applicable regulations define medical opinions as "statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).

The ALJ generally gives deference to the opinions of a treating source "since these are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ." 20 C.F.R.

---

[2] This finding obviates the need for in-depth analysis of Plaintiff's remaining assignments of error. The Undersigned need not, and does not, resolve the alternative bases that Plaintiff asserts support reversal and remand.

11

§ 416.927(d)(2); *Blakley*, 581 F.3d at 408. If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(d)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id.*

Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(d)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 2010 WL 1725066, at *7 (6th Cir. 2010) (internal quotation omitted).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(e). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(e); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). When considering the medical evidence and calculating the RFC, "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)); *see also Isaacs v. Astrue*, No. 1:08–CV–00828, 2009 WL 3672060, at *10 (S.D. Ohio Nov. 4, 2009) (holding that an "ALJ may not interpret raw medical data in functional terms") (internal quotations omitted).

Here, the ALJ erred in the degree of deference he assigned to Dr. Michalak's opinions, which precludes a finding that substantial evidence supports his decision. The ALJ adopted Dr. Michalak's 2008 opinion in which Dr. Michalak opined that Plaintiff suffered no impairment with respect to various physical limitations. (R. at 17.)  The ALJ accorded no weight, however, to Dr. Michalak's 2010 opinion in which he opined that Plaintiff suffers various physical limitations. In rejecting the more recent opinion, the ALJ stated that "[t]here has been no change in the claimant's condition from April 2008 until May 2010 to warrant the severe limitations offered [in the later opinion]." *Id.*  The ALJ cites neither a treatment note from Dr. Michalak nor an opinion from another physician to support his conclusion. Nor did he include a single physical limitation in his RFC. The ALJ, therefore, failed to articulate good reasons for rejecting the medical opinion of Plaintiff's treating physician.

The ALJ's rejection of the 2010 opinion and his conclusion that Plaintiff suffers no physical limitations constitutes error for several reasons. First, contrary to the ALJ's determination, Dr. Michalak did not opine in 2008 that Plaintiff suffers no physical limitations.

13

Although Dr. Michalak wrote the words "no impairment" in a box that refers to whether Plaintiff is impaired in her abilities to climb, twist, bend, reach and operate machinery, at the bottom of the same page, Dr. Michalak indicated that Plaintiff is unable to "do physical labor." (R. at 257.) Next to this notation, Dr. Michalak wrote in parenthesis: "chronic back pain." *Id.* Although at best the form contains an inconsistency related to Plaintiff's physical abilities, it cannot be said that the form constitutes evidence that Plaintiff suffers no physical limitations whatsoever.

Indeed, every other medical professional that commented on Plaintiff's physical condition opined that she suffered at least some limitation in this regard. Dr. Cook, for example, opined that Plaintiff suffers limitations in her ability to bend and lift. (R. at 280.) She also noted that stress will exacerbate Plaintiff's physical symptoms. (R. at 277.) In addition, Dr. Grodner opined that although Plaintiff can perform "most types" of physical activity, "weight bearing and heavy lifting will be difficult" due to decreased density of her bones. (R. at 480.) The ALJ dismissed out of hand the opinions of Drs. Cook and Grodner, and concluded that Plaintiff suffers no physical limitations. (R. at 17.) The ALJ's conclusion, however, finds no support in the medical evidence. Again, although he cites to Dr. Michalak's 2008 opinion to support his finding, even this opinion indicates that Plaintiff suffers some physical limitation due to "chronic back pain." (R. at 257.)

Furthermore, the ALJ's stated reason for rejecting Dr. Michalak's 2010 opinion fails to withstand scrutiny. The ALJ rejected Dr. Michalak's 2010 opinion on the basis that "[t]here has been no change in [Plaintiff's] condition" from 2008 to 2010 that could support the change in Dr. Michalak's conclusion related to physical limitations. (R. at 17.) Dr. Michalak's 2010 opinion, however, indicates that Plaintiff suffered an injury to her arm in March 2010. (R. at 587.)

Indeed, the ALJ acknowledges in his decision that "in March 2010 [Plaintiff] was seen for an injury to her right arm." (R. at 14.) The ALJ fails to consider this injury as a potential source of change responsible for the increase in physical limitations. For all of these reasons, the ALJ erred in rejecting Dr. Michalak's 2010 opinion and concluding that Plaintiff suffers no physical limitations. His error precludes a finding that substantial evidence supports his decision.

Accordingly, it is **RECOMMENDED** that the Commissioner's nondisability finding be **REVERSED** and that this action be **REMANDED** to the Commissioner and the ALJ under Sentence Four of § 405(g).

## VII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to

magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date: July 23, 2013              /s/ *Elizabeth A. Preston Deavers*
                                 Elizabeth A. Preston Deavers
                                 United States Magistrate Judge